# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

FRANK SOLOMON FEDD, SR., :
:
    Plaintiff, :
:
VS. :
: **1 : 09-CV-52 (WLS)**
BRIAN OWENS, et al., :
:
    Defendants. :
_____ :

## RECOMMENDATION

The Plaintiff filed this action in March 2009, raising claims of deliberate indifference to his serious medical conditions, to wit, cirrhosis of the liver and Hepatitis C. Presently pending herein are motions for summary judgment filed on behalf of Defendants Owens, Ammons, Duffey, Hutto, Adams, the Georgia Department of Corrections, and Lewis. (Docs. 21, 32). The Court notified the Plaintiff of the filing of the Defendants' motions, advised him of his obligations under the law, and directed him to respond thereto within twenty (20) days of his receipt of the Court's order. (Docs. 23, 36). The Plaintiff has filed an unsworn statement in response to the first summary judgment motion. (Docs. 42- 44). Although the Plaintiff was provided additional time in which to respond to the summary judgment motion filed on behalf of Defendant Lewis by order dated July 29, 2010, the Plaintiff has failed to file any additional response to either the Court's directives or to Defendant Lewis' motion. The Plaintiff's service copy of the July 29, 2010 order (Doc. 81) has not been returned to the Court as undeliverable.

The pending motions for summary judgment are brought on behalf of the following defendants: Brian Owens, Commissioner of the Georgia Department of Corrections; Thomas Ammons and Terry Duffey, wardens at Autry State Prison ("ASP") during portions of the time

period in question; Elaine Hutto, Health Services Administrator of ASP; Alan Adams, Director Health Services Clinical Staff of the Georgia Department of Corrections; the Georgia Department of Corrections; and Sharon Lewis, Medical Director for the Georgia Department of Corrections.

**Background**

According to the Plaintiff's complaint and Statement of Material Facts filed in opposition to the Defendants' summary judgment motions, Plaintiff entered into the custody of the Georgia Department of Corrections ("GDOC") on March 15, 2007 at Coastal State Prison. He informed medical personnel at his initial intake examination that he was positive for active HCV, or Hepatitis C.[1] Plaintiff was transferred to Autry State Prison (hereinafter "ASP") on June 16, 2007 and was confined at ASP until his release from confinement on May 10, 2010. (Doc. 82). Plaintiff's HCV was determined to be genotype 1-B on September 26, 2007. Plaintiff maintains that he continuously requested a liver biopsy, pursuant to GDOC's HCV Policy/Protocol for inmates with a genotype 1 diagnosis, between September 2007 and the approval of said biopsy on April 4, 2008, and that the biopsy was scheduled but cancelled in November 2007 and March 2008. Between November 2007 and July 2008, Plaintiff claims he was seen by ASP medical personnel on numerous occasions and was told no further treatment could be provided for his conditions until the liver biopsy was performed. (Doc. 2-1, ¶¶ 14-17, Doc. 44, ¶¶ 2-20).

Following a liver biopsy on July 31, 2008, Plaintiff was diagnosed with Stage 4/4 cirrhosis of the liver, caused by the Hepatitis C infection. Plaintiff was informed that doctors

---

[1]Hepatitis C is an infectious disease affecting the liver, caused by the hepatitis C virus and commonly referred to as "HCV". *The Merck Manual Online*, http://www.merck.com/mmpe/index.html.

could not treat his Hepatitis C infection further, due to the end-stage cirrhosis condition of his liver, and that the only available treatment option for the Stage 4/4 cirrhosis was a liver transplant. Plaintiff contends that he continued to request treatment for his HCV condition, and filed grievances regarding the denial of such treatment. In March 2009 and again in July 2009, Plaintiff's physicians submitted requests that Plaintiff receive a liver transplant evaluation. (Doc. 2-1, ¶¶ 19-29, Doc. 44, ¶¶ 22-25).

The Plaintiff maintains that the Defendants were deliberately indifferent to his serious medical conditions in delaying proper evaluation and treatment of his HCV condition and by refusing to accommodate his requests for a liver transplant evaluation.

**Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials,

and affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. In response, the non-movant cannot simply rest on the assertions in his pleadings, but must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Rule 56).

## Discussion

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citations omitted). "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Deliberate indifference requires that prison officials' response to the serious medical need "was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in the diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

### *Medical treatment received by the Plaintiff*

By means of affidavits and the Plaintiff's medical records, the Defendants set forth the following medical treatment provided to the Plaintiff in regard to his HCV and liver conditions

4

while he was confined at Autry State Prison. Treatment for ASP inmates with HCV takes place at the ASP Chronic Illness Clinic, part of the prison medical unit. (Doc. 22, Exh. B. ¶ 8). The Georgia Department of Corrections has a system in place whereby the treatment of inmates with HCV is managed by GDOC physicians, in consultation with specialists, pursuant to Clinical Updates produced as policy, or "Protocol", by the Office of Health Services of the GDOC. (Doc. 22, Exh. A. ¶ 19, Exh B. ¶ 10). Physicians use a "Hepatitis C Pre-Therapy Checklist" to evaluate the need for an inmate's further evaluation and treatment, including a liver biopsy. (Doc. 22, Exh. B ¶¶ 17, 19). HCV has at least six distinct forms, or genotypes, labeled 1 through 6. Genotype 1 is associated with a poorer response to treatment. (Doc. 22, Exh B, ¶ 21). Pursuant to GDOC protocol, once an inmate is diagnosed with genotype 1 HCV, a liver biopsy is performed and the biopsy is assigned a grade or stage of inflammation and fibrosis by a pathologist. (Doc. 22, Exh. B, ¶ 20). Genotype and biopsy results are the main indicators in a decision to start antiviral therapy for an inmate diagnosed with HCV. (Doc. 22, Exh. B, ¶ 22).

Plaintiff was transferred to ASP on June 16, 2007, and received a diagnostic medical evaluation and full metabolic panels. (Doc. 22, Exh. A, ¶¶ 14-17). Plaintiff was genotyped by September 24, 2007, as genotype 1, and a Pre-therapy Checklist was initiated by Dr. Smith, a physician in ASP's Chronic Infection Clinic, on October 2, 2007. *Id.*, ¶¶ 26, 27. On February 1, 2008, Dr. Smith requested a consult with an HCV specialist for evaluation of the Plaintiff's HCV condition and determination of his candidacy for a liver biopsy. This request was approved on February 4, 2008 and a consult was scheduled for March 13, 2008. *Id.,* ¶¶ 38, 41. Plaintiff was seen by medical personnel at least sixteen times between his arrival at ASP and March 13, 2008. During this time, Plaintiff also had five metabolic panels performed, an MRI, a Prothrombin test, and lab tests for glucose and hemoglogin levels. *Id.*, ¶¶ 15-42.

Plaintiff had a Telemedicine appointment with Dr. Ayaz Chaudhary, a physician who serves as a part-time consultant in the areas of gastroenterology and hepatology for the Medical College of Georgia, on March 13, 2008. (*Id.*, ¶ 43). Dr. Chaudhary recommended that Plaintiff receive a liver biopsy and, on March 13, 2008, Dr. Smith placed a consult request for Plaintiff to receive a liver biopsy. *Id.*, ¶¶ 43, 44. This request was approved on April 4, 2008, and the liver biopsy was scheduled for July 31, 2008. *Id.*, ¶ 45.

Plaintiff was seen by medical personnel on at least fourteen (14) occasions between March 13, 2008 and July 31, 2008, the date Plaintiff's liver biopsy was actually performed, and he underwent numerous medical and laboratory tests to monitor his conditions during this time period. *Id.*, ¶¶ 47-65. Plaintiff's liver biopsy was performed at Augusta State Medical Prison on July 31, 2008. *Id.*, ¶¶ 46, 67. Upon his return to ASP, Plaintiff was seen by Dr. Omitowoju in the Chronic Illness Clinic at ASP, who gave the Plaintiff his liver biopsy results on October 2, 2008. *Id.*, ¶ 79. Plaintiff had a Telemedicine consult with Drs. Chaudhary and Omitowoju on October 23, 2008, and Plaintiff was advised by Dr. Chaudhary that Plaintiff was ineligible for HCV antiviral treatment due to the advanced cirrhosis of his liver. *Id.*, ¶ 89.

Plaintiff requested and received a second Telemedicine consult with Dr. Chaudhary on March 19, 2009, and Dr. Chaudhary confirmed Plaintiff's ineligibility for further HCV treatment and that a liver transplant was indicated. *Id.*, ¶ 97. Following a third Telemedicine consult on June 11, 2009 with Dr. Chaudhary, Plaintiff received a fourth consultation, in person with Dr. Chaudhary, at Augusta State Medical Prison on July 9, 2009. *Id.*, ¶¶ 112, 117. At this consult, Dr. Chaudhary again advised the Plaintiff that his only remaining treatment option was a liver transplant. Dr. Chaudhary recommended that Plaintiff be placed on a liver transplant plan, which consists of referring his medical file to a liver transplant center for evaluation,

6

continued laboratory work-ups and testing and continual monitoring in the Chronic Illness Clinic. (Doc. 22, Chaudhary Affidavit, ¶ 31).

Medical personnel within the GDOC have referred the Plaintiff's medical file for evaluation to both liver transplant facilities in the state of Georgia. (Doc. 22, Exh. A, ¶ 121). One facility has indicated that Plaintiff is not a candidate for liver transplant, and as of September 30, 2009, the other facility had not issued a determination as to Plaintiff's eligibility for the liver transplant list. *Id.*, ¶¶ 122,123. The medical staff at ASP continued to seek transplant approval for the Plaintiff during the remainder of his incarceration at ASP, and continued to provide medical care for the Plaintiff in the form of testing, monitoring and prescribing medications for his conditions, including his HCV. *Id.*, ¶¶ 125-132.

In further support of their motions for summary judgment, the Defendants have submitted the affidavit testimony of Dr. Chaudhary, Plaintiff's treating hepatologist while in prison, regarding the issue of any delay in Plaintiff's treatment. Dr. Chaudhary testifies that

> Inmate Fedd was required to undergo a liver biopsy in order to evaluate his candidacy for antiviral treatment. The time taken for evaluation, genotyping, and biopsy needed to ascertain inmate Fedd's candidacy for antiviral treatment had no detrimental effect on his HCV infection. HCV is a slowly progressing disease; a period over a year is not sufficient time to affect an infected individual. Patients with end-stage liver disease, such as Inmate Fedd, are not considered candidates for HCV treatment because the liver is already damaged to the point that there are not a lot of cells to revive. Thus, the patient would not benefit from the treatment, based on the recommendations of the National Liver Society Guidelines. The testing and consultations that occurred in the intervening months between the date of his incarceration, March 15, 2007, and the date he received the liver biopsy, July 31, 2008, were necessary to properly evaluate his candidacy for antiviral treatment and to ensure that he received the proper treatment at the proper stage of his infection. The cirrhosis of inmate Fedd's liver was caused by his Hepatitis C infection (and perhaps lifestyle choices), and not by any alleged delay in

7

> treatment while he was incarcerated. It is my opinion that inmate Fedd received adequate and proper treatment.

Doc. 22, Chaudhary Affidavit, ¶¶ 35-41.

The Defendants have established that Plaintiff was provided extensive medical care for numerous medical conditions during his confinement at ASP, in particular for his HCV condition. The medical evidence produced and relied upon by the Defendants establishes that the Plaintiff received evaluation, testing, and treatment that resulted in a finding of Stage 4/4 cirrhosis and a recommendation for a liver transplant, which ASP officials requested and pursued on the Plaintiff's behalf until his release from custody in May 2010. The medical evidence relied upon by the Defendants also establishes that any delay in treatment and evaluation was necessary for proper treatment and did not negatively affect Plaintiff's conditions. The Defendants have thus met their burden on summary judgment to establish the absence of genuine issue of material fact regarding the care and treatment provided for the Plaintiff while he was confined at ASP between June 2007 and May 2010.

In response to the Defendants' summary judgment motions, the Plaintiff has submitted an unsworn brief and Statement of Material Facts. (Docs. 42-44). The Plaintiff basically agrees with the Defendants' recitation of the timeline and substance of the medical treatment and evaluation Plaintiff received while he was confined at ASP. However, the Plaintiff argues that the medical records evidence a delay in medical treatment that caused a worsening of his liver condition, as well as a delay in providing a liver transplant and worsening of his overall health, and that this delay rose to the level of deliberate indifference to his serious medical needs.

In response to the Defendants' summary judgment motion, the Plaintiff has submitted medical evidence consisting of: Plaintiff's August 2008 liver biopsy results, showing "mild

8

chronic hepatitis" and "Stage: 4/4 Cirrhosis" (Doc. 44, Exh. A); consultation requests and appointments in 2008 and 2009 reflecting the cirrhosis diagnosis and Plaintiff's requests for a liver transplant (Doc. 44, Exhs. B, D, E); and certain of Plaintiff's grievances and requests for treatment in the form of a liver transplant. (Doc. 44, Exhs. C, F, G).

The parties agree that the Plaintiff suffered from a serious medical condition during the time period in question, in the form of HCV and cirrhosis of the liver. The parties disagree, however, as to whether any delay in Plaintiff's treatment amounted to deliberate indifference to Plaintiff's serious medical needs. Delay in providing medical treatment for serious conditions can rise to the level of deliberate indifference "where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified." *Taylor*, 221 F.3d at 1259-60. "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." *Hill v. DeKalb RYDC*, 40 F.3d 1176, 1189 (11th Cir. 1994). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* at 1188.

Dr. Chaudhary's affidavit testimony establishes that any delay in Plaintiff's treatment was appropriate to his course of treatment and did not exacerbate his conditions. The Plaintiff has failed to overcome this testimony and has failed to establish that any delay in treating his HCV or liver condition exacerbated the conditions or was medically unjustified. None of the evidence submitted by the Plaintiff establishes a detrimental effect of delay in medical treatment on the Plaintiff's HCV or cirrhosis of the liver. Rather, Plaintiff's evidence and that submitted

9

by the Defendants shows the timeline of Plaintiff's treatment and Plaintiff's repeated disagreement with medical personnel over the course of his treatment. Such a disagreement over the course of treatment cannot support a claim for deliberate indifference brought pursuant to § 1983. "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). Plaintiff's statements fail to rebut the Defendants' summary judgment showing that Plaintiff's conditions worsened over time, but not as a result of any delay in medical diagnosis or treatment. Thus, Plaintiff's claim that Defendants' delay in diagnosis and treatment of his liver conditions amounted to deliberate indifference must fail. Accordingly, it is the recommendation of the undersigned that the Defendants' motions for summary judgment be **GRANTED**. (Docs. 21, 32).

*Injunctive relief*

Defendants have filed a Motion to Dismiss, seeking the dismissal of Plaintiff's claims for injunctive relief based on his release from custody. (Docs. 82, 84). Attached to Defendants' motion is the affidavit of Defendant Elaine Hutto, Health Services Administrator at ASP, who states that the Plaintiff was released from the custody of the Georgia Department of Corrections on May 10, 2010 pursuant to a medical reprieve. (Doc. 84, Hutto Affidavit, ¶ 5). Inasmuch as the Plaintiff has been released from the custody of the Georgia Department of Corrections, his claims for injunctive and declaratory relief have been rendered moot. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). Accordingly, it is the recommendation of the undersigned that the Defendants' Motion to Dismiss Plaintiff's claims for injunctive relief be **GRANTED** and that

Plaintiff's claims for injunctive relief be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this recommendation.

**SO RECOMMENDED**, this 24th day of August, 2010.

S/ *THOMAS Q. LANGSTAFF*

UNITED STATES MAGISTRATE JUDGE

asb